IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROSS CHRISTENSEN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>　　　　　　Defendant. | 8:23CV268<br><br>ORDER |

　　　　This matter is before the Court on Plaintiff's Motion to Exclude Undisclosed Expert Testimony of Dr. John Holland and Dr. John Charbonneau (Filing No. 43). Plaintiff seeks to exclude Dr. Holland and Dr. Charbonneau as Union Pacific's expert witnesses because they are retained expert witnesses that failed to write written reports disclosing their opinions under Rule 26 of the Federal Rules of Civil Procedure.

BACKGROUND

　　　　Plaintiff commenced this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 and 12112(b)(6), alleging Union Pacific utilized its fitness-for-duty procedure ("FFD") to impose work restrictions prohibiting him from performing his job duties, resulting in Union Pacific removing him from service. (Filing No. 1). Plaintiff was first hired by Union Pacific as a trainman on July 25, 2004; he subsequently worked as a switchman and brakeman, and he most recently worked as a conductor in Provo, Utah. (Filing No. 1 at p. 8).

　　　　On January 9, 2015, Plaintiff suffered a stroke while not at work and took medical leave. After his recovery period, Plaintiff sought to return to work, triggering a FFD evaluation. Plaintiff alleges his treating doctors cleared him to return to work with "little to no restrictions." On January 13, 2015, one of his physicians "cleared him to return to work as a conductor in or around the end of February after a week of light duty;" and on March 3, 2015, one of his physicians "cleared him to return to work with no restrictions." Plaintiff alleges that, despite his physician's clearances, Union Pacific gave him work restrictions for sudden incapacitation that he was told could be reviewed in January of 2016. (Filing No. 1 at p. 8).

In 2016, Plaintiff sought and obtained further clearances from his treating physicians, who all generally provided he could return to work with no restrictions. Despite these clearances, in a "Fitness-for-Duty Determination" memorandum dated March 18, 2016, Union Pacific's Chief Medical Officer, Dr. Holland, restricted Plaintiff from work for a minimum of five years because of sudden incapacitation risks. (Filing No. 1 at p. 9). Dr. Holland did not physically examine Plaintiff or otherwise speak to Plaintiff's treating physicians. As a result of Union Pacific's restrictions, Plaintiff was unable to return to his position and "concluded it would be pointless to continue to seek accommodations from Union Pacific as a conductor or any other position with the company." Plaintiff sought reconsideration of Union Pacific's 5-year work restrictions in February 2018, which was denied in October 2018, and advised Plaintiff should wait to seek reconsideration again until January 2020. Plaintiff "sent medical records to Union Pacific in order to facilitate his return to work" in March 2020, but "To date, he has heard nothing from Union Pacific regarding his return to work." (Filing No. 1 at p. 10).

Dr. Charbonneau first reviewed Plaintiff's medical records in January 2015 after Plaintiff suffered a stroke and made the initial assessment of Plaintiff's work restrictions to be reassessed at one-year post-stroke. (Filing No. 45-4 at pp. 12-15; Filing No. 45-5 at p. 4). Dr. Charbonneau testified he also reviewed the case with Dr. Holland, including the reassessment of Plaintiff's condition and restrictions in March 2016. (Filing No. 45-4 at pp. 16, 21-23). Dr. Charbonneau testified he did not talk to Plaintiff in March 2016, but instead both he and Dr. Holland relied on documentation from Plaintiff's neurologist. (Filing No. 45-4 at p. 19). Dr. Charbonneau also testified regarding his note recommending Plaintiff "start scheduling follow-up visits for his condition in late 2019 for consideration of return to work in January of 2020," which he stated, "comes from Dr. Holland's note of March of 2016." (Filing No. 45-4 at p. 24).

Dr. Holland reviewed Plaintiff's medical records and restrictions as part of a fitness for duty determination in March of 2016. (Filing No. 45-4 at pp. 18, 20; Filing No. 45-5 at pp. 6-7, 9; Filing No. 46-1). Dr. Holland did not physically examine or speak to Plaintiff or talk to his treating physicians, and instead reviewed Plaintiff's medical records. (Filing No. 45-5 at pp. 9-10).

In Union Pacific's "Rule 26(a)(1) Initial Disclosures" dated September 23, 2023, (Filing No. 45-3), it identified Dr. Holland, former medical director, as a witness who "may have knowledge concerning Union Pacific's fitness for duty policies and procedures, his review of

2

Plaintiff's medical records and information, Plaintiff's health condition, and his involvement in Plaintiff's FFD review as set forth in the Medical Comments History, and the restrictions applicable to Plaintiff." (Filing No. 45-3 at p. 3). Union Pacific similarly identified Dr. Charbonneau, former medical director, as a witness "expected to have knowledge concerning Plaintiff's medical history provided to Union Pacific and information to refute the allegations in Plaintiff's Complaint." (*Id.*). Plaintiff asserts "Defendant did not disclose either doctor as an expert in this case and the doctors did not provide any expert disclosures as required by Rule 26," seemingly referring to the fact that neither doctor authored and disclosed written reports. (Filing No. 44 at p. 2). The docket reflects that on April 8, 2024, Union Pacific served its expert disclosures upon Plaintiff, see Filing No. 29; however, neither party has provided the Court with a copy of Union Pacific's expert disclosures in connection with this motion.

During their depositions, Dr. Charbonneau and Dr. Holland testified they entered into contracts with Union Pacific both while employed with Defendant and for work during this litigation. Dr. Charbonneau testified he previously had a consulting agreement with Union Pacific under which he was guaranteed a minimum of 100 hours per month at $180 per hour, but under his most recent contract he just bills on an hourly basis without a 100 hour minimum guarantee. (Filing No. 45-4 at pp. 7-8). Dr. Charbonneau testified regarding the total compensation he has been paid from Union Pacific from 2018 to 2023. (Filing No. 45-4 at pp. 24-26). Dr. Holland retired from his position with Union Pacific in 2019, but has testified as an expert witness on behalf of Union Pacific in approximately 20 cases per year since his departure. During his tenure as Chief Medical Officer, Union Pacific paid Dr. Holland $185 an hour with a minimum guarantee of 80 hours a month. (Filing No. 45-2).

Plaintiff now moves to exclude the opinions of Dr. Holland and Dr. Charbonneau, asserting "[n]either was disclosed as an expert witness and both failed to provide expert disclosures as required by Rule 26 of the Federal Rules of Civil Procedure." (Filing No. 44 at p. 1). Plaintiff asserts these doctors are retained expert witnesses that failed to properly provide written reports disclosing their opinions under Rule 26, and that Union Pacific's description of their knowledge was "scant and vague." (Filing No. 44 at pp. 2-6).

Union Pacific responds that Plaintiff was put on notice of Dr. Holland and Dr. Charbonneau's testimony through Plaintiff's Rule 26(a)(1) initial disclosures and that both doctors are "hybrid" witnesses not required to author written reports under Rule 26(a)(2)(B).

3

Union Pacific argues Plaintiff cannot show prejudice or unfair surprise about the doctors' opinions because both doctors were deposed in this case (and several other similar cases), during which Plaintiff could have inquired about their opinions. (Filing No. 57 at pp. 1-3).

## DISCUSSION

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides disclosure requirements for expert witnesses. "For a witness retained or otherwise engaged to provide expert testimony in litigation," Rule 26(a)(2)(B) requires the witness to provide a written report, "signed by the witness, providing prescribed, detailed information." See *Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023). For experts who are not required to provide written reports, Rule 26(a)(2)(C) requires a "considerably less extensive" summary disclosure of the opinions to be offered. *Id.* (citing Rule 26 advisory committee note to 2010 amendment). This second category of "hybrid witnesses" need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)-(D); *cf. KOKO Dev., LLC v. Phillips & Jordan, Inc.*, 101 F.4th 544, 549 (8th Cir. 2024) ("This court has never even used the term 'hybrid witness.'").

The Eighth Circuit Court of Appeals discussed that Rule 26(a)(2)(C), which was added in 2010, was intended to address the confusion that had arisen among courts "as to whether and when a treating physician witness must be disclosed and provide a written report under Rule 26(a)(2)(B)." *Friesen*, 79 F.4th at 943. However, the Eighth Circuit recognized Rule 26(a)(2)(C) still "leaves unanswered the question whether a treating physician who will testify as an expert must be disclosed under Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." *Id.* The Eighth Circuit concluded the answer "does not turn on whether the treating physician expert was 'retained' or 'nonretained,'" but instead concluded "that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Id.* (quoting *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734-35 (7th Cir. 2010)).

4

In this case, the Court finds Dr. Holland and Dr. Charbonneau were not required to disclose written reports under Rule 26(a)(2)(B). As the Eighth Circuit has explained, the question does not turn on whether the witness is "retained" or "nonretained." See *Friesen*, 79 F.4th at 943. Instead, the Court looks to when the treating physician made his or her determination—if opinions and determinations were made in the course of providing treatment, then no report is required. See *id.* Both doctors reviewed Plaintiff's medical files during the FFD determination at issue in this case, and exercised their professional judgment to arrive at certain conclusions regarding Plaintiff's condition and restrictions during the course of Plaintiff's employment with Union Pacific. Neither doctor was solely retained to form expert opinions regarding Plaintiff's claims in this case. As such, they were not required to disclose written reports under Rule 26(a)(2)(B).

The Court next turns to whether Union Pacific properly disclosed Dr. Holland and Dr. Charbonneau as expert witnesses under Rule 26(a)(2)(C). Rule 26(a)(2)(C) requires more than a general identification of the subject matter of the non-retained expert's testimony; it also requires disclosure of the pertinent facts and opinions to which the expert will testify. See Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring disclosure of "the subject matter on which the witness is expected to present [expert] evidence"); Fed. R. Civ. P. 26(a)(2)(C)(ii) (requiring disclosure of "a summary of the facts and opinions to which the witness is expected to testify"). The Rule requires "'formal disclosure' of experts because 'knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.'" *Dey v. Coughlin*, No. 19-00318-CV-W-ODS, 2019 WL 9656363, at *1 (W.D. Mo. Nov. 8, 2019) (quoting *Lidge v. Sears, Roebuck & Co.*, No. 03-0024-CV-W-REL, 2004 WL 1151986, at *5 (W.D. Mo. Apr. 29, 2004)). Thus, a disclosure that "merely stat[es] the topic that will be discussed at a high level and/or identif[ies] documents containing information consistent with the opinion testimony to be offered" is insufficient; instead, the "disclosure must outline the main points of the anticipated testimony and inform the other side of the factual and opinion testimony of the non-retained expert so that the other side may prepare for trial." *Johnson v. Friesen*, No. 8:19-CV-322, 2022 WL 3108087, at *3 (D. Neb. Aug. 4, 2022), *aff'd*, 79 F.4th 939 (8th Cir. 2023) (internal citations omitted).

In this case, the record is unclear as to whether Union Pacific separately disclosed Dr. Holland and Dr. Charbonneau as expert witnesses under Rule 26(a)(2)(C). Union Pacific's brief in opposition to the motion states, "On September 25, 2023, Union Pacific timely disclosed Dr.

Holland and Dr. Charbonneau pursuant to Fed. R. Civ. P. 26(a)(2)(C)"; however, the record only establishes that these September 2023 disclosures were Union Pacific's initial disclosure of individuals likely to have discoverable information under Rule 26(a)(1), not expert witnesses under Rule 26(a)(2). And while Union Pacific later filed a certificate of service documenting it served Plaintiff with its expert disclosures on April 8, 2024, neither party provided the Court with a copy of those expert disclosures. Thus, the Court has no evidence that the doctors were also disclosed as experts under Rule 26(a)(2).

The Eighth Circuit has stated there is a meaningful distinction between disclosure under Rule 26(a)(1) and disclosure under 26(a)(2). "Under a plain reading of [Rule 26], witnesses presenting expert testimony must be specifically identified as witnesses presenting expert testimony—not as fact witnesses under Rule 26(a)." *KOKO Dev.*, 101 F.4th at 547-48. "Disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." *Id.* at 548 (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)). "Thus, the witnesses could still testify as fact witnesses, but they could not testify as experts." *Id.* (quoting *Musser*, 356 F.3d at 757). "[F]ailure to comply with Rule 26(a)(2)(A) leads to the exclusion of expert testimony by a witness not identified as an expert.'" *Id.* (citing *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018)).

The Eighth Circuit has explained, "The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg*, 906 F.3d at 702 (citing 8B Charles A. Wright, Arthur R. Miller et al., Federal Practice & Procedure § 2289.1 (3d ed. 2018)). "Rule 37(c)(1) provides that when a party fails to comply with the disclosure requirements in Rule 26(a), 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1). "The advisory committee notes describe this as 'a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion" for sanctions.'" *Id.* (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment). "In other words, if a party does not satisfy the expert disclosure requirements in Rule 26(a)(2), the undisclosed information or expert is excluded unless the failure was substantially justified or harmless." *Id.* at 703; see also *KOKO Dev.*, 101 F.4th at 548. The Eighth Circuit has emphasized that "Rule 37(c)(1) [only] addresses what to do if a party fails to disclose information as required by Rule 26(a) *and* attempts to use that information on a motion, at a

6

hearing, or at a trial." *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 435 (8th Cir. 2019) (emphasis in original). "[E]xclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022). Before excluding evidence, the Court must consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* at 644-45. Even if a disclosure is inadequate, the complaining party must articulate how it was (or will be) prejudiced by the late disclosure. *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 409 (8th Cir. 2023).

In Union Pacific's Rule 26(a)(1) initial disclosures, it identified Dr. Holland, former medical director, as a witness who "may have knowledge concerning Union Pacific's fitness for duty policies and procedures, his review of Plaintiff's medical records and information, Plaintiff's health condition, and his involvement in Plaintiff's FFD review as set forth in the Medical Comments History, and the restrictions applicable to Plaintiff." (Filing No. 45-3 at p. 3). Union Pacific similarly identified Dr. Charbonneau, former medical director, under Rule 26(a)(1) as a witness "expected to have knowledge concerning Plaintiff's medical history provided to Union Pacific and information to refute the allegations in Plaintiff's Complaint." Neither description of these witnesses' testimony specifically discloses "a summary of the facts *and opinions* to which the witness is expected to testify." See Fed. R. Civ. P. 26(a)(2) (emphasis added); see also *Vanderberg*, 906 F.3d at 703 (finding a Rule 26(a)(1) disclosure of a "treating physician and potential fact witness" and identification of "hundreds of pages of medical records . . . cannot change the fact that [the plaintiff] never disclosed [the treating physician] or anyone else as a 'witness it may use at trial to present' expert testimony" under Rule 26(a)(2)(A), and the production of medical records did not "constitute a disclosure stating 'the subject matter on which [the treating physician was] expected to present' expert testimony" under Rule 26(a)(2)(C). "While the records contained facts and opinions, they did not disclose what facts and what opinions would be provided by what witnesses. Nor can the hundreds of pages of medical records reasonably be called a 'summary.'").

Union Pacific does not concede its disclosures of Dr. Holland and Dr. Charbonneau were inadequate. Regardless, Union Pacific asserts that Plaintiff cannot show prejudice or surprise because "Plaintiff's counsel has been well aware of both physicians' roles at Union Pacific for

7

years prior to filing this action," and, through many similar ADA lawsuits involving Union Pacific's fitness-for-duty policy, Plaintiff's counsel "are well-acquainted with the roles of Dr. Holland and Dr. Charbonneau." (Filing No. 57 at p. 3). Additionally, Union Pacific states Plaintiff had the opportunity to depose both doctors during this case, during which he could have explored the basis for the doctors' determinations of Plaintiff's restrictions throughout the course of Plaintiff's employment.

The Eighth Circuit in *Vanderberg* was unpersuaded by a similar argument, "reject[ing] any suggestion that [the plaintiff's] failure to adhere to Rule 26(a)(2) was harmless because [the defendant] should have figured out that he would rely on his treating physicians to provide expert testimony on causation." 906 F.3d at 704. The Eighth Circuit explained, "The expert witness disclosure requirements would be rendered meaningless if a party could ignore them and then claim that the nondisclosure was harmless because the other party should have read between the lines. Moreover, parties . . . are entitled to presume that opposing parties will comply with the Rules of Civil Procedure and that experts will be properly disclosed in accordance with the rules." Id. Conversely, in *Gruttemeyer*, the Eighth Circuit concluded the district court did not abuse its discretion in admitting testimony of treating medical professional because "she testified as a treating practitioner only" and "the contents of [the witness's] testimony—treatment, observation, and diagnosis of [the plaintiff's] mental illnesses—were disclosed at the beginning of the case and remained unchanged." 31 F.4th at 645.

Union Pacific points out that Plaintiff's counsel is familiar with these doctors and their roles at Union Pacific from many other cases. However, the Court is only looking at the disclosures for those witnesses *in this case* and as applied to this plaintiff: Mr. Christensen. And in this case, such vague and generic disclosures—seemingly only under Rule 26(a)(1)—that can apply in any one of the cases against Union Pacific flout the requirements of Rule 26(a)(2)(C), which requires disclosure of both "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and " a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *Vanderberg*, 906 F.3d at 702-04; see also, e.g., *Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1060 (S.D. Iowa 2013) ("[W]hen a party merely states the name of the witness along with the witness' connection to the case, or where the party solely refers to medical or similar records that have already been produced, without providing a summary of the witness' expected testimony, the

8

party is not in full compliance with the disclosure requirements found in Rule 26(a)(2)(C)"); *Friesen*, No. 8:19-CV-322, 2022 WL 3108087, at *3 (finding a disclosure that "merely stat[es] the topic that will be discussed at a high level and/or identif[ies] documents containing information consistent with the opinion testimony to be offered" is insufficient).

Ultimately however, the Court concludes that exclusion of these witnesses is not warranted. Plaintiff primarily argues that Dr. Holland and Dr. Charbonneau should be excluded as witnesses because they did not author written reports, a position with which the Court firmly rejects for the reasons discussed above. Beyond that, *Petrone* dictates that this motion seeking exclusion is premature. "Rule 37(c)(1) [only] addresses what to do if a party fails to disclose information as required by Rule 26(a) *and* attempts to use that information on a motion, at a hearing, or at a trial." *Petrone*, 940 F.3d at 435 (emphasis in original). Union Pacific did disclose Dr. Holland and Dr. Charbonneau as fact witnesses at the outset of this case and described the information they have. However, the Court has no information regarding the specific testimony from Dr. Holland and Dr. Charbonneau that Union Pacific intends to offer, and whether such testimony is outside the scope of Union Pacific's disclosures.[1] Accordingly,

**IT IS ORDERED:** Plaintiff's Motion to Exclude Undisclosed Expert Testimony of Dr. John Holland and Dr. John Charbonneau (Filing No. 43) is denied without prejudice to reassertion if Union Pacific offers testimony or information from Dr. Holland or Dr. Charbonneau "on a motion, at a hearing, or at a trial" that was not disclosed in Union Pacific's September 25, 2023, initial disclosures or April 8, 2024, expert disclosures.

Dated this 24th day of April, 2025.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

---

[1] Union Pacific filed a motion for summary judgment on February 7, 2025, the same day Plaintiff filed the instant motion to exclude. (Filing No. 49). Plaintiff's reply brief in support of this motion to exclude, filed February 28, 2025, only reiterates that Dr. John Holland and Dr. John Charbonneau should be excluded for failing to author written expert reports, but does not point to any undisclosed information from either doctor offered by Union Pacific in support of summary judgment. (Filing No. 59).